UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
RENE ARTURO LOPEZ, *et al.*,              )
                                          )
        Plaintiffs,                       )
                                          )
        v.                                )        Civil Action No. 10-0023 (PLF)
                                          )
COUNCIL ON AMERICAN-ISLAMIC               )
RELATIONS ACTION NETWORK, INC.,           )
                                          )
        Defendant.                        )
_____ )


OPINION

        This matter is before the Court on motions by the defendant to dismiss the

plaintiffs' complaint or, in the alternative, to consolidate this case with a related civil action and

reassign the consolidated cases to Judge Urbina.  After careful consideration of the parties'

arguments, the relevant legal authorities, and the entire record in this case and in related cases,

the Court will grant the defendant's motion to dismiss with regard to the plaintiffs' claim

alleging violations of the District of Columbia Consumer Protection Act, but will deny the

defendant's motion to dismiss the remainder of the plaintiffs' claims.  The Court will grant the

defendant's motion to consolidate this case with a related matter, but deny the motion to reassign

the consolidated cases to Judge Urbina.[1]

_____

        [1]    The documents reviewed by the Court in connection with the motions in question
include the following: plaintiffs' first amended complaint ("Compl."); defendant's motion to
dismiss the complaint ("MTD"); plaintiffs' opposition to the motion to dismiss ("Opp.");
defendant's reply in support of its motion to dismiss ("Reply"); defendant's motion to transfer
and consolidate related cases ("Trans. Mot."); plaintiffs' opposition to defendant's motion to
transfer and consolidate; and defendant's reply in support of the motion to transfer and
consolidate.

I.  BACKGROUND

*A.  Plaintiffs' Claims*

According to the plaintiffs' first amended complaint, defendant Council on American-Islamic Relations Action Network, Inc. ("CAIR") operates as a public interest law firm formed to protect the civil liberties of Muslims in the United States.  Compl. ¶ 15.  CAIR has a main office in the District of Columbia and a variety of branch offices located throughout the country.  Id.  Until recently, one of those branch offices ("CAIR-VA") was located in Herndon, Virginia.  Id. ¶ 3.

Beginning in 2006, CAIR-VA employed as a staff attorney an individual named Morris J. Days III.  Compl. ¶ 4.  Mr. Days was tasked with "provid[ing] legal representation to Muslims complaining of various civil rights abuses," id., and CAIR-VA referred to him as its "resident attorney" in promotional materials.  Id. ¶ 17.  Mr. Days, however, was not a licensed attorney, and the plaintiffs contend that CAIR-VA "knew or should have known" that he was not.  Id. ¶ 5.  In February of 2008, after receiving complaints about Mr. Days from his clients, CAIR-VA terminated his employment. Id. ¶¶ 33-35.

At various points during 2007 and 2008, plaintiffs Rene Lopez, Aquilla Turner, Mohammed Abdussalaam, and Bayenah Nur each sought legal services from Mr. Days.  See Compl. ¶¶ 55, 83, 100.  Mr. Abdussalaam came to Mr. Days in February of 2007 claiming that he had been the victim of employment discrimination and seeking legal representation from CAIR.  Id. ¶ 55.[2]  Although Mr. Days promised that he would file a complaint in federal district court on

_____

[2]     The complaint does not actually make specific allegations about Mr. Abdussalaam by name, but for reasons unknown refers to one plaintiff only as "MB."  See Compl. ¶¶ 55-82. The Court assumes, by a process of elimination, that "MB" is Mohammed Barakatullah Abdussalaam.  If that reasoning proves to be incorrect, and the complaint in fact includes no

Mr. Abdussalaam's behalf and accepted $250 from Mr. Abdussalaam as a payment towards the cost of filing fees, no complaint was ever filed.  Id. ¶¶ 60, 67-68.  Mr. Abdussalaam did not learn that Mr. Days was not actually a licensed attorney until after the statute of limitations applicable to his claims had already run.  Id. ¶¶ 68, 75.

In June of 2007, plaintiffs Rene Lopez and Aquilla Turner approached Mr. Days at CAIR-VA and requested help with an immigration matter and a divorce, respectively.  Compl. ¶ 83.  Mr. Days asked for $1,100 in legal fees, id. ¶ 84, which Mr. Lopez and Ms. Turner paid partly in cash and partly by performing "some chores at Days' home."  Id. ¶¶ 85-86.  In February of 2008, Ms. Turner learned that Mr. Days was no longer employed by CAIR-VA.  Id. ¶ 89.  She and Mr. Lopez continued to communicate with Mr. Days by phone until Mr. Days' phone line was disconnected and he could no longer be reached.  Id. ¶ 90.  Although Ms. Turner spoke to multiple CAIR-VA employees after the termination of Mr. Days' employment, none of those employees informed her that Mr. Days had never been a licensed attorney.  Id. ¶¶ 92-94.  Whether Mr. Days ever performed any significant legal services related to Mr. Lopez's or Ms. Turner's case is unclear from the complaint.

Plaintiff Bayenah Nur called CAIR-VA in November of 2007 regarding her belief that her employer was illegally discriminating against her.  Compl. ¶ 100.  Mr. Days told Ms. Nur that he, acting on behalf of CAIR, would represent her.  Id. ¶ 101.  He then contacted Ms. Nur's employer, Star Tek, Inc., and informed a "senior company official" that Ms. Nur had retained him to represent her in connection with a discrimination claim against the company.  Id. ¶ 102.  Soon afterward, Star Tek offered to address Ms. Nur's claims of discriminatory harassment by

specific allegations concerning Mr. Abdussalaam, the defendant certainly will be welcome to file an appropriate motion to dismiss his claims.

transferring her to another division of the company.  Id. ¶ 105.  Acting on Mr. Days' advice, Ms. Nur rejected that offer.  Id. ¶¶ 107-08.  Star Tek responded by placing Ms. Nur on unpaid leave in November of 2007.  Id. ¶ 108.

In December of 2007, a CAIR-VA employee helped Ms. Nur file state and federal administrative claims alleging employment discrimination.  Compl. ¶ 109.  The federal claim was rejected by the EEOC in January 2008.  Id. ¶ 111.  Mr. Days and another CAIR-VA employee told Ms. Nur in the following months that they were preparing an appeal of the EEOC's decision and a complaint to be filed in federal court, but in reality, neither Mr. Days nor any other CAIR employee initiated an administrative appeal or a case in federal court.  Id. ¶ 118.

In May of 2008, Ms. Nur, still on unpaid leave from Star Tek, moved from Virginia to North Carolina "in order to find employment."  Compl. ¶ 116.  When she phoned CAIR-VA to check on the status of her case, she was told by a CAIR-VA staff member that Mr. Days no longer worked with CAIR, but that other CAIR staffers would continue to handle her legal claims.  Id. ¶¶ 116-18.  After July of 2008, however, Ms. Nur received no further communications from CAIR or CAIR-VA.  The period in which she could have timely filed an administrative appeal or a complaint based on her EEOC claim expired in 2008.  Id. ¶ 120.

*B. Prior Lawsuit*

The plaintiffs first attempted to pursue claims against CAIR in federal court by filing a complaint in this Court on November 18, 2008, initiating a case that the Court will call Lopez I.  See Lopez v. Council on American-Islamic Relations Action Network, Inc., Civil Action No. 08-1989, Complaint at 1 (D.D.C. Nov. 18, 2009).  The Lopez I complaint named as defendants CAIR, Morris Days, numerous CAIR/CAIR-VA employees, and an assortment of

individuals and companies alleged to be connected to CAIR in some capacity. It set out the same core set of facts contained in the complaint currently before the Court and framed those facts as the basis for a claim brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d), which deems unlawful, among other things, the formation of a conspiracy "to participate . . . in the conduct of [an] enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c)-(d). According to the Lopez I complaint, Morris Days and CAIR violated RICO by conspiring to defraud Mr. Days' clients and then to conceal that fraud. See Lopez I, 657 F. Supp. 2d 104, 111 (D.D.C. 2009). In addition to their RICO claim, the plaintiffs alleged that the defendants were liable for violations of the consumer protection statutes of Virginia and the District of Columbia and for common law fraud, breach of fiduciary duty, infliction of emotional distress, conversion, and unjust enrichment. See id. at 108.

The plaintiffs claimed in Lopez I that a federal court could exercise subject matter jurisdiction over their complaint because it alleged a RICO violation and thus presented a question of federal law. See Lopez I, Civil Action No. 08-1989, Complaint ¶ 9 (D.D.C. Nov. 18, 2008). Judge Urbina, however, determined that the complaint failed to state a viable claim under RICO. See Lopez I, 657 F. Supp. 2d at 114-15. He ruled that the plaintiffs' allegations did not "indicate that the RICO Defendants engaged in a 'pattern of racketeering activity'" or state facts showing the existence of a conspiracy, id., and that the plaintiffs lacked standing to bring a RICO claim because, while they alleged that they had been injured by *Days*, they had failed to assert facts from which it could be inferred that they had been injured by any joint action of Days and CAIR. Id. at 111-12. Plaintiffs' RICO claim therefore was dismissed. See id. at 116. In the

absence of the RICO claim, the asserted basis for federal question jurisdiction no longer existed. Id. at 115-16. Lacking jurisdiction over the plaintiffs' case, Judge Urbina also dismissed the plaintiffs' state law claims. Id. That ruling was affirmed on appeal. See Lopez I, No. 09-7129, 2010 WL 2689367 (D.C. Cir. June 8, 2010).

On January 6, 2010, the plaintiffs initiated the instant litigation by filing a new incarnation of the Lopez I complaint. They filed an amended complaint on January 13, 2010. The complaint currently before the Court alleges the same core set of facts that were presented in Lopez I. Unlike the complaint in Lopez I, however, it names a single defendant, CAIR, and invokes the Court's jurisdiction pursuant to 28 U.S.C. § 1332, alleging that the parties are diverse and that the amount in controversy is greater than $75,000. See Compl. ¶ 10. All references to RICO have been eliminated from the pending complaint, which asserts claims for fraud, breach of fiduciary duty, intentional infliction of emotional distress, and violations of D.C. Code § 28-3901 and Va. Code § 59.1-204 — all state law causes of action.

Also on January 6, 2010, counsel for plaintiffs in this case filed a second case, Saiyed v. Council on American-Islamic Relations Action Network, Inc., Civil Action No. 10-0022 ("Saiyed"). The complaint filed in that case named a single plaintiff, Iftikhar Saiyed, and contained precisely the same allegations against CAIR made in the instant case, except that allegations concerning Mr. Saiyed's interactions with Mr. Days replaced those regarding Mr. Lopez, Ms. Turner, Mr. Abdussalaam, and Ms. Nur. Mr. Saiyed's complaint also enumerated the same claims as the complaint in the instant case: fraud, breach of fiduciary duty, intentional infliction of emotional distress, and violations of D.C. Code § 28-3901 and Va. Code § 59.1-204.

On February 24, 2010, CAIR moved to consolidate the instant case with Saiyed and to reassign both cases to Judge Urbina for adjudication, since Judge Urbina had presided over Lopez I. See Trans. Mot. at 1. The next day, CAIR filed the pending motion to dismiss the plaintiffs' complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and 12(b)(7) of the Federal Rules of Civil Procedure. See MTD at 2-3. In the alternative, CAIR seeks the dismissal of each count of the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules.

## II. SUBJECT MATTER JURISDICTION

The plaintiffs have invoked the Court's jurisdiction in this case under 28 U.S.C. § 1332, claiming that complete diversity of citizenship exists among opposing parties and that the amount in controversy exceeds $75,000. CAIR argues that in fact, neither the requisite diversity of citizenship nor a sufficient amount in controversy is present in this case. See MTD at 2. The Court disagrees.

### A. Standard of Review

Federal courts are courts of limited jurisdiction, with the ability to hear only cases entrusted to them by a grant of power contained in either the Constitution or in an act of Congress. See, e.g., Beethoven.com LLC v. Librarian of Congress, 394 F.3d 939, 945 (D.C. Cir. 2005); Hunter v. District of Columbia, 384 F. Supp. 2d 257, 259 (D.D.C. 2005). On a motion to dismiss for lack of subject matter jurisdiction, the plaintiffs bear the burden of establishing that the Court has jurisdiction. See Brady Campaign to Prevent Gun Violence v. Ashcroft, 339 F. Supp. 2d 68, 72 (D.D.C. 2004). In determining whether to grant a motion to dismiss for lack of

subject matter jurisdiction, the Court must construe the complaint in the plaintiffs' favor and treat all well-pled allegations of fact as true. See Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005). The Court need not accept unsupported inferences or legal conclusions cast as factual allegations. See Primax Recoveries, Inc. v. Lee, 260 F. Supp. 2d 43, 47 (D.D.C. 2003). Under Rule 12(b)(1), the Court may dispose of the motion on the basis of the complaint alone or it may consider materials beyond the pleadings, "as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." Scolaro v. D.C. Board of Elections and Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000).

## B. Diversity of Citizenship

Under 28 U.S.C. § 1332, this Court has subject matter jurisdiction over a case not presenting a federal question only if "the matter in controversy exceeds the sum or value of $75,000, . . . and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a). On its face, the complaint filed by the plaintiffs in this case appears to present a dispute between "citizens of different States"; defendant CAIR is a citizen of the District of Columbia, Compl. ¶ 13, while each of the plaintiffs is a citizen of Virginia or, in the case of Ms. Nur, possibly North Carolina. Id. CAIR does not dispute those facts, but instead argues that the plaintiffs have met the diversity requirement only by failing to name as defendants Morris Days and CAIR-VA, both said to be Virginia citizens who, according to CAIR, are indispensable parties and therefore must be joined in this matter under Rule 19 of the Federal Rules of Civil Procedure. See MTD at 9-10.[3]

---

[3]      Defendant invokes both Rule 12(b)(1) of the Federal Rules of Civil Procedure, which identifies lack of subject matter jurisdiction as a ground for dismissal of a civil complaint,

Rule 19(a) provides:

(1) *Required Party*.  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or

> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

>> (i) as a practical matter impair or impede the person's ability to protect the interest; or

>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1).  If CAIR-VA or Morris Days is a "required party" as defined by Rule 19(a), then the Court must join that party "if feasible."  See FED. R. CIV. P. 19(a).  Of course, the Court cannot join a Virginia citizen as a defendant in this action; if it did so, it would run afoul of the express terms of Rule 19(a) because diversity of citizenship would no longer exist between opposing parties, and the Court would lack subject matter jurisdiction.  See FED. R. CIV. P. 19(a)(1) (person whose joinder meets criteria of Rule 19 must be joined unless joinder will deprive court of subject matter jurisdiction).  Because joinder of Mr. Days or CAIR-VA thus is not "feasible," the Court would, if either party were "required" within the terms of Rule 19(a), be forced to decide whether either party was "indispensable" by determining "whether, in equity and good conscience, the action should proceed among the existing parties or be dismissed."  FED. R. CIV. P. 19(b).

---

and Rule 12(b)(7), which relates to dismissal for failure to join a party under Rule 19, in support of this argument.

The Court need not proceed far along this line of analysis because neither CAIR-VA nor Mr. Morris is a required party as defined by Rule 19(a).  CAIR contends that Mr. Morris' joinder is required because (1) the plaintiffs attempt to hold CAIR liable for Mr. Days' torts under the doctrine of *respondeat superior*; (2) Mr. Days "has an interest in the subject matter of this action" because it concerns the alleged tortiousness of his own behavior; and (3) if Mr. Days is not joined as a party, CAIR will be left "vulnerable to a substantial risk of incurring inconsistent obligations."  MTD at 11.  None of those arguments withstands scrutiny.  First, an "employee is not a necessary party to a suit against his employer under *respondeat superior*." Rieser v. District of Columbia, 563 F.2d 462, 469 (D.C. Cir. 1977).  Second, CAIR's argument regarding Mr. Days' "interest" in this litigation is wholly conclusory.  To qualify as a required party, a person must have not just any interest, but a "legally protected" interest in the litigation. See, e.g., Three Affiliated Tribes of the Fort Berthold Indian Reservation v. United States, 637 F. Supp. 2d 25, 30 (D.D.C. 2009).  CAIR has made no attempt to demonstrate that Mr. Days has such an interest.[4]  Finally, CAIR has failed to specify in what manner Mr. Days' absence from this litigation leaves it "vulnerable to a substantial risk of incurring inconsistent obligations." Such a conclusory assertion is insufficient to establish that a substantial risk actually exists.

Similarly, CAIR's arguments concerning the need for CAIR-VA's presence in this litigation are conclusory and unpersuasive.  CAIR's reasoning on this point consists almost entirely of the statement that "there can be no dispute that CAIR-VA has an interest in the subject matter of the action, and that the disposition of the action could both impede CAIR-VA's ability

---

[4]         The plaintiffs have also asserted, without rebuttal from the defendant, that Mr. Days has died and left no estate.  See Opp. at 26.  That circumstance would seem to limit the extent of Mr. Days' interest in any litigation.

to protect that interest and/or leave CAIR vulnerable to a substantial risk of incurring inconsistent

obligations as a result of that interest." MTD at 11. But again, CAIR does not explain what sort

of "interest" CAIR-VA has in this action, and not just any interest will suffice to render CAIR-

VA a required party.[5] Nor has CAIR explained how CAIR-VA's absence from this litigation will

subject it to a significant risk of "inconsistent obligations." Furthermore, complete relief can

easily be apportioned among the existing parties, since the plaintiffs seek damages and may, if

they prevail, receive those in full from CAIR. In the absence of any concrete example of a

substantial risk to CAIR-VA or CAIR resulting from CAIR-VA's absence from this lawsuit, the

defendant has not shown that CAIR-VA is a required party under Rule 19(a). The parties to this

case remain as they are named in the complaint, and diversity of citizenship exists between them.

### C.  Amount in Controversy

The diversity statute, 28 U.S.C. § 1332(a), provides for federal jurisdiction over

civil actions between citizens of different states, but only where the amount in controversy,

exclusive of interest and costs, exceeds $75,000. See 28 U.S.C. § 1332(a). When the court

considers whether a claim meets the amount-in-controversy requirement, "the sum claimed by

the plaintiff controls if the claim is apparently made in good faith." St. Paul Mercury Indem. Co.

v. Red Cab Co., 303 U.S. 283, 288 (1938) (footnotes omitted). Dismissal is justified only if it

"appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount," Id.

In short, "the Supreme Court's yardstick demands that courts be very confident that a party

---

[5]         Indeed, the Court is not even certain, based on the allegations in the complaint and the representations of CAIR, that CAIR-VA is an entity legally distinct from CAIR itself. The complaint alleges that CAIR-VA is either (1) a branch office of CAIR, see Compl. ¶¶ 15-16, or (2) a subsidiary of CAIR that operates as its *alter ego*. See id. ¶ 16. If the former is the case, then CAIR-VA has no legal identity independent of CAIR and functionally is a party in this case.

cannot recover the jurisdictional amount before dismissing the case for want of jurisdiction."

Rosenboro v. Kim, 994 F.2d 13, 17 (D.C. Cir. 1993).

> As the Supreme Court has held:
>
> where the other elements of jurisdiction are present and at least one named plaintiff in [an] action satisfies the amount-in-controversy requirement, [28 U.S.C.] § 1367 . . . authorize[s] supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction.

Exxon Mobil Corp. v. Allapattah Servs., 545 U.S. 546, 549 (2005); see id. at 558-60. The claims of all plaintiffs in this case form part of a single case or controversy because they arise from "a common nucleus of operative fact," United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); each plaintiff claims injuries resulting from CAIR/CAIR-VA's employment of Mr. Morris and his false representation that he was a licensed attorney. Consequently, under Allapattah, this Court may exercise supplemental jurisdiction over the claims of the remaining plaintiffs so long as at least one plaintiff makes satisfactory allegations of a right to damages equal to or exceeding $75,000.

CAIR argues that the Court should disregard the plaintiffs' claims for damages related to emotional distress as having been made in bad faith. See MTD at 17-19. The Court will not assume, and defendant has not demonstrated, that this claim is made in bad faith. But even if the Court does disregard those claims for the purpose of this analysis, plaintiff Bayenah Nur has stated a claim for damages in excess of $75,000. Ms. Nur alleges that, after taking action in reliance on Mr. Days' legal advice, she was placed on unpaid leave from her place of employment and was forced to relocate to North Carolina in order to find paying work. See

Compl. ¶¶ 107-08, 116.  She seeks compensatory damages (lost wages and moving expenses) in the amount of $8,925.  See id. ¶ 122.  She also seeks punitive damages.  See id. ¶ 176.  It is established that punitive damages count toward the amount in controversy so long as "the punitive damage claim . . . has at least a colorable basis in law and fact."  Thomas v. Nat'l Legal Prof'l Assocs., 594 F. Supp. 2d 31, 33 (D.D.C. 2009) (quoting Kahal v. J.W. Wilson & Assocs., Inc., 673 F.2d 547, 549 (D.C. Cir. 1982)) (internal quotation marks omitted); see also G. Keys PC/Logis NP v. Pope, 630 F. Supp. 2d 13, 17 (D.D.C. 2009).   Under Virginia law, a complaint states a valid claim for punitive damages if it alleges that a defendant committed a tortious act with "actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of another."  Simbeck, Inc. v. Dodd Sisk Whitlock Corp., 508 S.E.2d 601, 604 (Va. 1999).  This cases involves such claims.

CAIR contends that Ms. Nur's claims fail to meet the amount-in-controversy requirement because to obtain damages of $75,000, she would have to receive punitive damages of at least $66,075, which creates a ratio of punitive to compensatory damages of approximately 7.4.  See MTD at 20.  Upholding a damage award that creates such a ratio, argues CAIR, would violate the limits placed on punitive damage awards by the Due Process Clause, as explained by the Supreme Court in State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003).  MTD at 20.  The Court disagrees.  "The closest the Supreme Court has come to establishing a hard ratio cap on punitive damages is to admonish that 'few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.'"  Thomas v. Nat'l Legal Prof'l Assocs., 594 F. Supp. 2d at 34 (quoting State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. at 425).  A 7 to 1 ratio is well within that presumptive outer boundary.  At

this stage in this litigation, the Court cannot conclude to "a legal certainty," <u>Rosenboro v. Kim</u>, 994 F.2d at 17, that an award against the defendant having such a ratio of punitive to compensatory damages would violate the Due Process Clause. <u>See</u> <u>Thomas v. Nat'l Legal Prof'l Assocs.</u>, 594 F. Supp. 2d at 34 (refusing, on a motion to dismiss for failure to meet the amount-in-controversy requirement, to find that an award creating a 6.5 to 1 ratio would be unconstitutional and so unobtainable by the plaintiff). Ms. Nur thus has made a colorable claim that the amount in controversy in this case exceeds $75,000. The plaintiffs' claims therefore will not be dismissed for failure to meet the requirements of 28 U.S.C. § 1332(a).

## D. Standing

CAIR's contention that the plaintiffs lack Article III standing to bring their claims, <u>see</u> MTD at 21, merits little discussion. The plaintiffs allege that they paid wrongful legal fees or were deprived of wages as a result of the tortious actions of Mr. Days and that CAIR bears legal responsibility for Mr. Days' conduct under the doctrine of *respondeat superior*. That allegation alone is sufficient to demonstrate standing. CAIR is simply wrong in suggesting that "[p]laintiffs are bound by this Court's previous determination in <u>Lopez I</u> that they do not have standing to bring their claims because they failed to demonstrate that their injuries were caused by CAIR." MTD at 21. Judge Urbina held in <u>Lopez I</u> that the plaintiffs lacked standing to bring a RICO claim because the injuries they alleged did not result from any actions taken by CAIR in furtherance of a racketeering conspiracy. <u>See</u> <u>Lopez I</u>, 657 F. Supp. 2d at 111-12. He did not purport to decide whether the plaintiffs would have standing to bring tort claims predicated on the theory that CAIR is vicariously liable for the actions of Mr. Days. Since <u>Lopez I</u> did not decide the relevant issue, it does not control the outcome of the question of standing in this case.

## III.  SUFFICIENCY OF CLAIMS

Having determined that it may exercise jurisdiction over the subject matter of this litigation, the Court now turns to the defendant's claims that the plaintiffs' complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.  In order to assess the legal sufficiency of the plaintiffs' claims, the Court must first determine which law applies.

### *A.  Choice of Law*

In a diversity action, a federal district court applies the choice of law principles of the state or jurisdiction in which it sits.  See Rafferty v. NYNEX Corp., 60 F.3d 844, 849-50 (D.C. Cir. 1995) (citing Bledsoe v. Crowley, 849 F.2d 639, 641 (D.C. Cir. 1988)); Long v. Sears Roebuck & Co., 877 F. Supp. 8, 10-13 (D.D.C. 1995).  The District of Columbia employs a "modified 'governmental interest analysis,'" under which the court evaluates the governmental policies underlying the applicable laws and determines which jurisdiction's policy would be most advanced by having its laws applied to the facts in the case.  Thompson v. Islam, Civil Action No. 01-585, 2005 WL 3262926, at *4 (D.D.C. July 29, 2005).  Under District of Columbia conflict of laws principles, the Court must conduct the choice of law analysis for each claim being adjudicated.  See Long v. Sears Roebuck & Co., 877 F. Supp. at 11; In re Air Crash Disaster at Washington, D.C., 559 F. Supp. 333, 341 (D.D.C. 1983).  Plaintiffs contend that either District of Columbia law or Virginia law governs this action, while defendant maintains that Virginia law controls.  See Compl. ¶¶ 154, 160, 168; see also Opp. at 43, n. 37; see also MTD at 27 n. 17.

For a tort claim, the state whose policy would be advanced the most is the state with the most significant relationship to the case. <u>District of Columbia v. Coleman</u>, 667 A.2d 811 (D.C. 1995). The Court considers the place where the injury occurred, the place where the conduct causing the injury occurred, the residence, domicile, place of incorporation or place of business of the parties, and the place where the parties' relationship, if any, is centered. <u>See</u> <u>Restatement (Second) of Conflict of Laws</u> § 145 (1971); <u>Long v. Sears Roebuck & Co.</u>, 877 F.Supp. at 11. In light of the allegations contained in the plaintiffs' complaint, the Court concludes that Virginia has the most significant relationship with this case and that its policies "would be more advanced by the application of its law to the facts of th[is] case."

Although CAIR is incorporated in the District of Columbia and, according to the complaint, a few of the phone calls between CAIR employees and the plaintiffs originated in the District of Columbia, most of the relevant contacts occurred in Virginia. <u>See</u> Compl. ¶¶ 11-12, 55-110. Plaintiffs Lopez, Abdussalaam, and Turner are citizens of Virginia.[6] Days worked out of the CAIR branch in Herndon, Virginia, and all of the alleged misrepresentations made by Days occurred in Virginia. <u>Id</u>. ¶¶ 19, 55-63, 83-87, 100-110. All of the phone calls, email correspondence and face-to-face meetings between Mr. Days and the plaintiffs occurred in Virginia. <u>Id</u>. ¶¶ 55-110. It appears that the few documents that Mr. Days actually filed were mailed from Virginia. <u>Id</u>. ¶ 88. Thus, nearly all of the events at issue in this case occurred in Virginia, and the injuries alleged were inflicted primarily on individuals living in Virginia. Virginia law therefore applies to the plaintiffs' tort claims.

_____

[6] Plaintiff Nur was a citizen of Virginia at the time of all of the relevant incidents in the case. She has since relocated to North Carolina.

16

The same analysis applies to plaintiffs' statutory claims, pled under both the

Virginia Consumer Protection Act and the District of Columbia Consumer Protection Act.  See

Compl. ¶¶ 127-152; Washkoviak v. Student Loan Marketing Ass'n, 900 A.2d 168, 180 (D.C.

2006) (applying the "significant relationship" test to determine which state's consumer protection

statute was applicable in a case where the victims of the alleged conduct lived in one state, while

the defendant was located in another).  Virginia's consumer protection law, not the District of

Columbia's, therefore controls the plaintiffs' claims.  The plaintiffs' claims under the District's

statute will be dismissed, and the Court will apply Virginia's statutory and common law to

determine whether the plaintiffs' remaining claims survive under Rule 12(b)(6) of the Federal

Rules of Civil Procedure.

## B.  Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of a

complaint if a plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P.

12(b)(6).  In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court noted that

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim

showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what

the . . . claim is and the grounds upon which it rests[.]'"  Id. at 544 (quoting Conley v. Gibson,

355 U.S. 41, 47 (1957)); see also Erickson v. Pardus, 551 U.S. 89 (2007); Aktieselskabet AF 21

v. Fame Jeans Inc., 525 F.3d 8, 15 (D.C. Cir. 2008).  Although "detailed factual allegations" are

not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of

"entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a

formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 550

U.S. at 555; see also Papasan v. Allain, 478 U.S. 265, 286 (1986).  The Court stated that there was no "probability requirement at the pleading stage," Bell Atlantic Corp. v. Twombly, 550 U.S. at 556, but "something beyond . . . mere possibility . . . must be alleged[.]"  Id. at 557  The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level," id. at 555, because Rule 8(a)(2) requires a "showing," rather than a "blanket assertion," of entitlement to relief, id. at 555 n.3.  The complaint must be sufficient "to state a claim for relief that is plausible on its face."  Id. at 570.  The Court referred to this newly clarified standard as "the plausibility standard."  Id. at 560 (abandoning the "no set of facts" language from Conley v. Gibson).

On a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint."  Erickson v. Pardus, 551 U.S. at 94; see also Bell Atlantic Corp. v. Twombly, 550 U.S. at 555.  The complaint "is construed liberally in the [plaintiff's] favor, and [the Court should] grant [the plaintiff] the benefit of all inferences that can be derived from the facts alleged."  Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.  See Kowal v. MCI Communications Corp., 16 F.3d at 1276; Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).

### C. Virginia Consumer Protection Act

CAIR argues that the allegations pled by the plaintiffs do not state a claim under Virginia's Consumer Protection Act, Va. Code §§ 59.1-196 et seq., because "the 'majority of jurisdictions that have addressed this issue have held that the regulation of attorneys does not fall

within the ambit of consumer protection laws." MTD at 26 (quoting Beyers v. Richmond, 594 Pa. 654, 660 & n.7 (2007)). The plaintiffs, however, do not challenge the conduct of attorneys; they complain that CAIR knowingly employed and held out a non-attorney as a provider of legal services. As a result, CAIR's argument is inapposite.

### D. Fraud

Under Virginia law, the elements necessary to state a claim of actual fraud are: (1) a false representation (2) of a material fact (3) made intentionally or knowingly (4) with the intent to mislead; (5) reliance by the misled party; and (6) injury. Winn v. Aleda Constr. Co., 315 S.E.2d 193 (Va. 1984). Each element of the claim must be pled with particularity — including identification of the agents, officers, and employees of the entities who are alleged to have perpetrated the fraud and the details of the time and place of the fraudulent acts. Weiss v. Cassidy Devel. Corp., 61 Va. Cir. 237 (Cir. Ct. 2003); accord FED. R. CIV. P. 9(b).

The complaint states that between February of 2007 and September of 2008, Days knowingly and with the specific intent to defraud made representations to the plaintiffs regarding his competency as an attorney. See Compl. ¶ 23. Defendant argues that this is a conclusory statement and does not meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. See Mot. at 27-29. The Court disagrees. The statements made in support of the plaintiffs' fraud claim do not appear solely in Paragraph 23 of the complaint. On the contrary, the complaint outlines specific instances in which Mr. Days told the plaintiffs that he was an attorney and took money for his services. See Compl. ¶ ¶ 55, 60, 83, 85, 101. It also recounts face-to-face meetings and telephone calls between Days and the plaintiffs and alleges dates on which the meetings occurred. See Compl. ¶¶ 55-126, 153-157. The statements in the

complaint are specific enough to meet the first four elements of fraud even when applying the heightened requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

The complaint also meets that heightened standard for elements five and six of the definition of fraud under Virginia law. Mr. Lopez, Ms. Turner, and Mr. Abdussalam claim that, in reliance on the representations of Mr. Days and/or CAIR that Mr. Days was a qualified attorney, they paid Mr. Days legal fees for services that he was not licensed to perform and that he never did perform. See Compl. ¶¶ 60, 85. Ms. Nur alleges that, in reliance on Mr. Days' legal advice, which he was not, in fact, qualified to give, she declined a settlement offer from her employer and was placed on unpaid leave as a result. See id. ¶¶ 107-08. These are sufficiently specific allegations to state a claim for fraud.

## E. Breach of Fiduciary Duty

To prevail on a claim for breach of fiduciary duty in Virginia, plaintiffs must prove facts sufficient to establish the following: (1) the defendant owed plaintiff a fiduciary duty; (2) defendant breached that duty; and (3) the breach proximately caused an injury. Carstensen v. Chrisland Corp., 442 S.E.2d 660 (Va. 1994). In Virginia, "[e]vidence of advice and counsel in business matters involving a degree of trust is necessary to show a fiduciary relationship." Oden v. Salch, 379 S.E.2d 346, 351 (Va. 1989). An attorney has a fiduciary duty to his or her client. Martin v. Phillips, 235 Va. 523, 527 (1988).

The defendant does not deny that the plaintiffs put their trust and confidence in Mr. Days or that there was a fiduciary relationship between Mr. Days and the plaintiffs. Instead, CAIR argues that it cannot be liable for breach of fiduciary duty because the plaintiffs put their trust in Mr. Days, not in CAIR. See Mot at 29-30. Regardless of whether CAIR itself had a

fiduciary duty to the plaintiffs, the complaint alleges sufficient facts to suggest that Mr. Days had

such a duty, that he breached it, and that CAIR is vicariously liable for his conduct.  Plaintiffs

therefore state a claim for breach of fiduciary duty against CAIR.

## F.  Intentional Infliction of Emotional Distress

To establish a prima facie case for the tort of intentional infliction of emotional

distress ("IIED") under Virginia law, plaintiffs must allege: "(1) the wrongdoer's conduct was

intentional or reckless; (2) the conduct was outrageous and intolerable; (3) there was a causal

connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional

distress was severe." Hatfill v. The New York Times Co., 532 F.3d 312 (4th Cir. 2008); Womack

v. Eldridge, 210 S.E.2d 145 (Va. 1974).

CAIR argues that the conduct of Mr. Days and of CAIR itself described in the

complaint does not "rise to the level of 'outrageous' or 'intolerable.'" MTD at 32.  The Court is

not so certain.  The plaintiffs allege that Mr. Days held himself out as an attorney; that they

entrusted their legal problems, including a divorce petition and a personal immigration matter, to

him; and that Mr. Days mishandled those problems while, in some cases, demanding fees for

services he knew he would not provide.  He did all of this when, it is alleged, he was not licensed

to practice law.  While reasonable minds could differ as to whether Mr. Days' conduct, for which

CAIR may be vicariously liable, was extreme and outrageous, "it is for the jury . . . to determine

whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result

in liability."  Womack v. Eldridge, 210 S.E.2d at 148 (citation and internal quotation marks

omitted); see also Perk v. Worden, 475 F. Supp. 2d 565, 570 (E.D. Va. 2007).

CAIR also contends that the plaintiffs have failed to allege that they have suffered sufficiently severe emotional distress. This is a close question. Because the tort of intentional infliction of emotional distress is disfavored under Virginia law, Virginia courts have defined the tort narrowly. See, e.g., Ruth v. Fletcher, 377 S.E.2d 412, 415 (Va. 1989). In particular, to state a claim for IIED, a plaintiff must allege that she has experienced emotional injury so severe that "no reasonable person could be expected to endure it." Russo v. White, 400 S.E.2d 160, 163 (Va. 1991).

The complaint contains the same rote allegations of emotional distress with regard to each plaintiff in this action: the plaintiff is said to have "suffered severe emotional, mental, and physical distress . . . , including anxiety, lack of appetite, inability to sleep, relationship problems with . . . friends and family, inability to sustain employment resulting from . . . anxiety, and other manifestations." Compl. ¶¶ 79 (Mr. Abdussalaam); 96 (Ms. Turner and Mr. Lopez); 123 (Ms. Nur). Most of those alleged symptoms of distress fall into the category of injuries judged insufficient by the Virginia courts to rise to the level of severe distress required to state a claim for IIED. See Russo v. White, 400 S.E.2d at 163 (a plaintiff fails to allege sufficiently severe distress where she merely claims that "she was nervous, could not sleep, experienced stress and 'its physical symptoms,' withdrew from activities, and was unable to concentrate at work").

On the other hand, allegations of emotional distress have been upheld as sufficient under Virginia law where they stated that the defendant's conduct "rendered [the plaintiff] functionally incapable of carrying out any of her work or family responsibilities." Almy v. Grisham, 639 S.E.2d 182, 188 (Va. 2007). Here, the plaintiffs claim that Mr. Days' actions

resulted in their "inability to sustain employment." See Compl. ¶¶ 79, 96, 123. At this stage of the litigation, such a statement alleges sufficient distress to satisfy the liberal pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Cf. Hatfill v. New York Times Co., 416 F.3d 320, 337 (4th Cir. 2005) (under liberal pleading requirements of the federal courts, plaintiff alleged sufficient emotional distress under Virginia law where he merely claimed that he suffered "severe emotional distress"). Whether this claim can withstand a motion for summary judgment after discovery is a question for another day.

IV. DEFENDANT'S MOTION TO CONSOLIDATE AND REASSIGN THIS CASE

CAIR has requested that this case be consolidated with Saiyed v. Council on American-Islamic Relations Action Network, Inc., Civil Action No. 10-0022, pending before the undersigned, and that both cases be reassigned to Judge Urbina. See Trans. Mot. at 1. Because the Court finds that both cases share "common question[s] of law or fact," they will be consolidated. FED. R. CIV. P. 42(a). Reassignment of this case to Judge Urbina, however, is neither necessary nor desirable under this Court's Local Civil Rules.

The defendant correctly points out that, under Local Civil Rule 40.5(a)(4), this case is related to Lopez I. But where, as here, "the existence of related cases . . . is revealed after the cases are assigned, the judge having the later-numbered case may transfer" it to "the judge having the earlier case" if "good cause exists for the transfer." LOC. CIV. R. 40.5(c)(2). No such good cause exists in this case. Having considered and resolved the matters discussed in this Opinion, this Court is more familiar with this case than Judge Urbina, having written the opinion in Lopez I, would be. Reassignment of this case therefore would save neither time nor effort. CAIR's motion thus will be denied.

## V. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part CAIR's motion to dismiss this case, grant the motion to consolidate this case with <u>Saiyed</u>, and deny the motion to reassign this matter to Judge Urbina. An Order consistent with this Opinion shall be issued this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: September 30, 2010