UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IFTIKHAR SAIYED,<br><br>Plaintiff,<br><br>v.<br><br>COUNCIL ON AMERICAN-ISLAMIC<br>RELATIONS ACTION NETWORK, INC.,<br><br>Defendant.<br>_____<br><br>RENE ARTURO LOPEZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNCIL ON AMERICAN-ISLAMIC<br>RELATIONS ACTION NETWORK, INC.,<br><br>Defendant.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Civil Action No. 10-0023 (PLF) |

OPINION

Pending before the Court in these consolidated actions is the motion [Dkt. No.

135 in Civil Action No. 10-0022 and Dkt. No. 136 in Civil Action No. 10-0023] of defendant

Council on American-Islamic Relations Action Network, Inc. ("CAIR") for partial summary

judgment on plaintiffs' claim under the Virginia Consumer Protection Act ("VCPA"), VA. CODE

ANN. § 59.1-196, et seq. Upon careful consideration of the parties' papers, the relevant legal

authorities, and the entire record in this case, the Court will deny the motion.[1]

## I. BACKGROUND

The Court's prior Opinions summarize the factual and procedural history of this

case. See Lopez v. CAIR, 741 F. Supp. 2d 222 (D.D.C. 2010); Saiyed v. CAIR, 742 F. Supp. 2d

84 (D.D.C. 2010); Saiyed v. CAIR, 78 F. Supp. 3d 465 (D.D.C. 2015), rev. and remanded by

Lopez v. CAIR, 826 F.3d 492 (D.C. Cir. 2016). Briefly, CAIR is a national "Muslim advocacy

group." See Statement of Facts at 4. Between 2007 and 2008, plaintiffs sought legal assistance

from Morris Days, an individual who was hired to "act as resident attorney" of CAIR's Virginia

chapter, CAIR-VA. See id. at 4-5. In particular, Mr. Days allegedly promised to assist plaintiffs

with claims relating to "immigration status, divorce proceedings, hostile work environment, and

employment discrimination." See Lopez Am. Compl. ¶ 14; Saiyed Am. Compl. ¶¶ 54-55. Mr.

Days purportedly took money and other forms of payment from at least some of the plaintiffs in

exchange for these promises of representation, despite CAIR's policy to provide legal services

pro bono. See Statement of Facts at 5; Saiyed Am. Compl. ¶ 6. Mr. Days, however, was not a

licensed attorney and "did not provide the services he represented he would provide Plaintiffs."

---

[1]    Unless otherwise noted, all references to the docket in this Opinion are to Civil
Action No. 10-0022. The Court reviewed the following filings and exhibits attached thereto in
resolving the pending motion: Saiyed Amended Complaint ("Saiyed Am. Compl.") [Dkt. No.
3]; Lopez Amended Complaint ("Lopez Am. Compl.") [Dkt. No. 5 in Civil Action No. 10-0023];
October 7, 2016 Memorandum Opinion and Order ("Oct. 7, 2016 Mem. Op. & Order") [Dkt. No.
108]; CAIR's Motion for Partial Summary Judgment ("Mot.") [Dkt. No. 135]; Plaintiffs'
Memorandum in Opposition to Motion for Partial Summary Judgment ("Opp'n") [Dkt. No. 136];
Plaintiffs' Separate Statement of Facts ("Statement of Facts") [Dkt. No. 136]; CAIR's Reply in
Support of Motion for Partial Summary Judgment ("Reply") [Dkt. No. 137]; CAIR's Motion for
Summary Judgment "Def. MSJ" [Dkt. No. 80 in Civil Action No. 10-0023]; CAIR's Motion to
Dismiss and Request for Hearing "Def. MTD" [Dkt. No. 9]; and December 14, 2017 Minute
Order by Magistrate Judge Deborah A. Robinson ("Dec. 14, 2017 Minute Order").

Statement of Facts at 5. CAIR-VA was dissolved in 2008. See Statement of Facts at 4; Def. MSJ at 12.

In 2010, plaintiffs filed two separate lawsuits against CAIR based on Mr. Days' misrepresentations. The Court subsequently granted CAIR's motion to consolidate the cases. See Saiyed v. CAIR, 742 F. Supp. 2d at 89; Lopez v. CAIR, 741 F. Supp. 2d at 239. Plaintiffs filed their first amended complaints in 2010 asserting five causes of action: (1) violations of the District of Columbia Consumer Protection Procedures Act (Count One); (2) violations of the VCPA (Count Two); (3) common law fraud and conspiracy to commit fraud (Count Three); (4) breach of fiduciary duties (Count Four); and (5) infliction of emotional distress (Count Five). See Saiyed Am. Compl. ¶¶ 84-129; Lopez Am. Compl. ¶¶ 127-172.

In 2010, the Court granted CAIR's motion to dismiss plaintiffs' claim brought under the District of Columbia Consumer Protection Act (Count One), holding that "Virginia's consumer protection law, not the District of Columbia's . . . controls the plaintiffs' claims." See Lopez v. CAIR, 741 F. Supp. 2d at 235; Saiyed v. CAIR, 742 F. Supp. 2d at 88. In 2015, the Court granted summary judgment in favor of CAIR and dismissed the remaining claims. See Saiyed v. CAIR, 78 F. Supp. 3d 465. In 2016, the D.C. Circuit reversed this Court's grant of summary judgment on the ground that plaintiffs had "presented sufficient evidence in this case to raise a genuine issue of material fact" as to whether an "actual agency relationship existed between Days and CAIR National." See Lopez v. CAIR, 826 F.3d at 497.

On remand, this Court ruled that three causes of action would proceed to trial: (1) common law fraud under Virginia law (Count Three); (2) common law breach of fiduciary duty under Virginia law (Count Four); and (3) violation of the VCPA (Count Two). See Oct. 7,

2016 Mem. Op. & Order at 2.  CAIR moved for partial summary judgment on the VCPA claim

(Count Two) in January 2018.  See Mot. at 1.


## II. LEGAL STANDARD

Summary judgment is appropriate only if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see Baumann v. District of

Columbia, 795 F.3d 209, 215 (D.C. Cir. 2015); FED. R. CIV. P. 56(a), (c).  In making that

determination, the Court must view the evidence in the light most favorable to the nonmoving

party and draw all reasonable inferences in its favor.  Baumann v. District of Columbia, 795 F.3d

at 215; see Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (per curiam); Anderson v. Liberty

Lobby, Inc., 477 U.S. at 255; Talavera v. Shah, 638 F.3d 303, 308 (D.C. Cir. 2011).

A disputed fact is "material" if it "might affect the outcome of the suit under the

governing law." Talavera v. Shah, 638 F.3d at 308 (quoting Anderson v. Liberty Lobby, Inc.,

477 U.S. at 248).  A dispute over a material fact is "genuine" if it could lead a reasonable jury to

return a verdict in favor of the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007);

Grimes v. District of Columbia, 794 F.3d 83, 94-95 (D.C. Cir. 2015); Paige v. DEA, 665 F.3d

1355, 1358 (D.C. Cir. 2012).  "Credibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from the facts are jury functions, not those of a judge at

summary judgment.  Thus, [the Court] do[es] not determine the truth of the matter, but instead

decide[s] only whether there is a genuine issue for trial." Barnett v. PA Consulting Grp., Inc.,

715 F.3d 354, 358 (D.C. Cir. 2013) (quoting Pardo-Kronemann v. Donovan, 601 F.3d 599, 604

(D.C. Cir. 2010)). See also Tolan v. Cotton, 134 S. Ct. at 1866; Baumann v. District of Columbia, 795 F.3d at 215; Allen v. Johnson, 795 F.3d 34, 38 (D.C. Cir. 2015).

## III.  DISCUSSION

In its motion, CAIR contends that the legal services at issue do not qualify as "consumer transactions" under the VCPA. See Mot. at 7. CAIR further argues that even if the legal services at issue qualify as "consumer transactions," they are excluded under the terms of the statute. See id. at 10. For the reasons that follow, the Court disagrees. Concluding that CAIR is not entitled to judgment as a matter of law, it therefore will deny the motion for summary judgment.

### A.  Preliminary Matters

As a preliminary matter, plaintiffs argue that the motion is untimely under Rule 56 of the Federal Rules of Civil Procedure. See Opp'n at 11. The Court disagrees. Rule 56 provides that "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." FED. R. CIV. P. 56(b). In December 2017, Magistrate Judge Deborah A. Robinson – to whom this case was referred for the management of discovery – issued an order permitting plaintiffs to take a "follow-on deposition" of CAIR's legal expert on February 12, 2018. See Dec. 14, 2017 Minute Order. It thus appears that discovery remained open until at least February 12, 2018. Given that CAIR filed its motion on January 24, 2018, the motion is timely.

Plaintiffs next argue that the Court already decided this issue when it determined there to be a "cause of action . . . stated under the VCPA." See Opp'n at 12. Plaintiffs are incorrect. In its motion to dismiss filed in 2010, CAIR argued that attorneys are not covered by

the VCPA as "suppliers" because "the majority of jurisdictions that have addressed this issue have held that the regulation of attorneys does not fall within the ambit of consumer protection laws." See Lopez v. CAIR, 741 F. Supp. 2d at 236 (citations omitted). See also Def. MTD at 41. In rejecting this argument, the Court reasoned that plaintiffs "do not challenge the conduct of attorneys; they complain that CAIR knowingly employed and held out a non-attorney as a provider of legal services." See Lopez v. CAIR, 741 F.Supp.2d at 236. In contrast, the question now pending before the Court is whether the legal services at issue qualify as a "consumer transaction" for purposes of the VCPA, irrespective of Mr. Days' and CAIR's status as non-lawyers. This is a separate issue which the Court has not previously addressed. Accordingly, the Court declines plaintiffs' invitation to construe this motion as a motion for reconsideration of the Court's Order denying CAIR's motion to dismiss the VCPA claim. See Opp'n at 12.

### B. "Consumer Transaction" Under the VCPA

The VCPA establishes a cause of action for any individual "who suffers loss," VA. CODE ANN. § 59.1-204(A), as a result of a "fraudulent act[] or practice[] committed by a supplier in connection with a consumer transaction." See id. § 59.1-200. "To state a cause of action under the VCPA, Plaintiff must allege (1) fraud [or misrepresentation], (2) by a supplier, (3) in a consumer transaction." Enomoto v. Space Adventures, Ltd., 624 F. Supp. 2d 443, 456 (E.D. Va. 2009). The VCPA defines a "consumer transaction" to include "[t]he advertisement, sale, lease, license or offering for sale, lease or license, of goods or services to be used primarily for personal, family or household purposes." VA. CODE ANN. § 59.1-198. The VCPA further defines "services" to include "(i) work performed in the business or occupation of the supplier [or] (ii) work performed for the supplier by an agent whose charges or costs for such work are transferred by the supplier to the consumer or purchaser as an element of the consumer

6

transaction." See id. While the parties agree that the dealings between CAIR, Mr. Days, and plaintiffs are "legal services," they disagree about whether those legal services qualify as a "consumer transaction" under the VCPA.

To determine whether the VCPA applies to the legal services at issue, this Court must interpret and apply the Virginia statute. See Mot. at 7. In interpreting a state statute, a federal court sitting in diversity must apply the state's substantive law. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. And whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern."). See also Burke v. Air Serv Int'l, Inc., 685 F.3d 1102, 1107 (D.C. Cir. 2012). To determine state substantive law – whether state common law or state statutory law – the Court is bound by the decisions of the state's highest court interpreting that state's law. See Wainwright v. Goode, 464 U.S. 78, 84 (1983). See also Animal Sci. Prod., Inc. v. Hebei Welcome Pharm. Co., 138 S. Ct. 1865, 1874 (2018); Rogers v. Ingersoll-Rand Co., 144 F.3d 841, 843 (D.C. Cir. 1998); JN Expl. & Prod. v. W. Gas Res., Inc., 153 F.3d 906, 913 (8th Cir. 1998).

Here, the parties agree that the highest court of the Commonwealth of Virginia has not interpreted the meaning of "consumer transaction" under the VCPA. In the absence of a decision by the state's highest court, a federal court's role in interpreting and applying state law is to attempt to "achieve the same outcome [it] believe[s] would result if the [state's highest court] considered this case." See Metz v. BAE Sys. Tech. Sol. & Serv. Inc., 774 F.3d 18, 21-22 (D.C. Cir. 2014) (quoting Novak v. Capital Mgmt. and Dev. Corp., 452 F.3d 902, 907 (D.C. Cir. 2006)). See also Kelly v. Richard Wright Pub. Charter Sch., 317 F. Supp. 3d 564, 566 (D.D.C.

7

2018); Easaw v. Newport. 253 F. Supp. 3d 22, 33-34 (D.D.C. 2017). "[T]his Court's duty is to

predict, as best it can, how the [state's highest court] would decide the issue . . . ." Kelly v.

Richard Wright Pub. Charter Sch., 317 F. Supp. 3d at 566. See also 19 CHARLES ALAN WRIGHT,

ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4507, at

124-25 (3d ed. 2018) ("[T]he federal court must determine issues of state law as it believes the

highest court of the state would presently determine them, not necessarily (although usually this

will be the case) as they previously have been decided by other state courts.").

To determine how the highest court of a state would rule on an issue of state law,

federal courts "consider all of the resources to which the highest court of the state could look,"

see Leon's Bakery, Inc. v. Grinnell Corp., 990 F.2d 44, 48 (2d Cir. 1993), giving some deference

to judgments by intermediate appellate courts. See West v. Am. Tel. & Tel. Co., 311 U.S. 223,

237 (1940) ("[I]t is the duty of [federal courts] in every case to ascertain from all the available

data what the law is and apply it . . . ."). While the decision of a state intermediate appellate

court is not controlling, a judgment by an intermediate appellate court "is a datum for

ascertaining state law which is not to be disregarded by a federal court unless it is convinced by

other persuasive data that the highest court of the state would decide otherwise." See West v.

Am. Tel. & Tel. Co., 311 U.S. at 237. See also Allstate Ins. v. Menards, Inc., 285 F.3d 630, 637

(7th Cir. 2002); Howe ex rel. Howe v. Scottsdale Ins., 204 F.3d 624, 627 (5th Cir. 2000);

Richardson v. United States, 841 F.2d 993, 996 (9th Cir. 1988).

Even less weight is accorded to the decision of a state trial court. See, e.g.,

Hampton Co. Nat. Sur., LLC. v. Tunica County, Mississippi, 543 F.3d 221, 226 (5th Cir. 2008);

Bryant Elec. Co., Inc. v. City of Fredericksburg, 762 F.2d 1192, 1194 (4th Cir. 1985). "State

trial court decisions are . . . entitled to consideration as an indication of what state law is, but in

and of themselves they are not controlling on the federal courts, especially if they are not regarded as precedents within the state itself." 19 WRIGHT, MILLER & COOPER, supra, § 4507, at 152-53. A federal court is tasked with evaluating lower court decisions just as the state's highest court would – that is, it is "empowered to change state law and correct what it believes to be erroneous rulings of lower state courts." See id. at 120.

CAIR relies exclusively on two Virginia Circuit Court decisions holding that the VCPA does not apply to legal services because legal services do not meet the statutory definition of "consumer transaction." See Oberto v. Grogan, No. CL14-138, 88 Va. Cir. 188, 2014 WL 8383045, at *2 (Va. Cir. Ct. Apr. 18, 2014); Bd. of Dirs. of the Port Royal Condo. Unit Owners' Ass'n v. Crossland Sav. FSB, No. (Chancery) 18453, 1989 Va. Cir. LEXIS 80, 15 Va. Cir. 239, 241 (Va. Cir. Ct. Jan. 5, 1989). Although Virginia Circuit Courts are "[t]he only trial court of general jurisdiction in Virginia," qualifying civil decisions are appealable from them directly to the Supreme Court of Virginia by petition, meaning that there can be no intermediate appellate rulings on these cases or this issue.[2] Notwithstanding this hybrid model, Virginia Circuit Court precedent is nonbinding, and "it would be incongruous indeed to hold the federal court bound by a decision which would not be binding on any state court." King v. Order of United Com. Travelers of Am., 333 U.S. 153, 161 (1948). See also Bryant Elec. Co. v. City of Fredericksburg, 762 F.2d at 1194 ("[S]uch lower court opinions . . . are not binding on the Virginia Supreme Court or on [the Fourth Circuit][;] these decisions 'are entitled to consideration as an indication of what state law is . . . .'" (citing WRIGHT, MILLER & COOPER,

---

[2]       See Office of the Exec. Sec'y, Supreme Court of Virginia, Virginia Courts in Brief, VIRGINIA'S JUDICIAL SYSTEM, http://www.courts.state.va.us/courts/home.html (last visited Sept. 25, 2018).

FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 4507 (1981))); Harris v. Lukhard, 733 F.2d 1075, 1082 (4th Cir. 1984).

Without further explanation, two Virginia Circuit Court judges have stated that "legal services" do not fit the definition of a "consumer transaction" under the VCPA and that "[i]t would be [an] anomalous result to conclude that some legal services are covered by the [VCPA] while others are not." See Oberto v. Grogan, 88 Va. Cir. 188, 2014 WL 8383045, at *2 (quoting Bd. of Dirs. of the Port Royal Condo. Unit Owners' Ass'n v. Crossland Sav. FSB, 1989 Va. Cir. LEXIS 80, 15 Va. Cir. at 241-42). But both of those cases involved malpractice claims against attorneys, not individuals or organizations who improperly held themselves out as licensed attorneys and provided legal services. The Court therefore finds those decisions inapposite and unpersuasive. More importantly, they are not binding on this Court in discerning how the highest court of the Commonwealth of Virginia would interpret the VCPA.

In projecting or predicting how the highest court of the state would interpret a state statute, the Court may consider state trial court precedent, even though it is not binding, see, supra, at 8-9, and should also consider all other resources that the highest court of the state would itself consider. See, e.g., Leon's Bakery, Inc. v. Grinnell Corp., 990 F.2d at 48. It then applies established methods of statutory interpretation that the highest court of the state would apply. See Travelers Ins. Co. v. 633 Third Assocs., 14 F.3d, 114, 119 (2d Cir. 1994). According to the Virginia Supreme Court, "[t]he primary objective in statutory construction is to determine and give effect to the intent of the legislature as expressed in the language of the statute. When a statute is unambiguous, we must apply the plain meaning of that language. If the statute is subject to more than one interpretation, we must apply the interpretation that carries out the legislative intent." See Appalachian Power Co. v. State Corp. Com'n, 733 S.E.2d 250, 256 (Va.

2012) (citations omitted). See also Halifax Corp. v. First Union Nat. Bank, 546 S.E.2d 696, 702 (Va. 2001) ("[T]he intention of the legislature . . . must be gathered from the words used, unless a literal construction would involve a manifest absurdity." (quoting Watkins v. Hall, 172 S.E. 445, 447 (Va. 1934))); Barr v. Town & Country Properties, Inc., 396 S.E.2d 672, 674 (Va. 1990); Brown v. Lukhard, 330 S.E.2d 84, 87 (Va. 1985) ("[W]hen the language of an enactment is free from ambiguity, resort to legislative history and extrinsic facts is not permitted because we take the words as written to determine their meaning." (citing City of Portsmouth v. City of Chesapeake, 136 S.E.2d 817, 825 (Va. 1964))). On the other hand, when statutory language is ambiguous or uncertain, courts attempt to predict how the highest court of the state would resolve the uncertainty by looking at "statutory language, pertinent legislative history, the statutory scheme set in historical context, how the statute can be woven into the state law with the least distortion of the total fabric, state decisional law, federal cases which construe the state statute, scholarly works and any other reliable data tending to indicate how the [higher state court] would resolve the issue." See Travelers Ins. Co. v. 633 Third Assocs., 14 F.3d at 119 (citation omitted). See also Yurecka v. Zappala, 472 F.3d 59, 62 (3d Cir. 2006); N. Am. Specialty Ins. v. Lapalme, 258 F.3d 35, 38 (1st Cir. 2001).

The first question here is whether the statutory term "consumer transaction" in the VCPA is ambiguous. For the VCPA to apply to dealings between a consumer and a supplier, a supplier must commit "fraudulent acts or practices . . . in connection with a consumer transaction." VA. CODE ANN. § 59.1-200. To qualify as a "consumer transaction," the dealings between a consumer and a supplier must constitute "[t]he advertisement, sale, lease, license or offering for sale, lease or license, of goods or services to be used primarily for personal, family or household purposes." Id. § 59.1-198. The "services" to be used "include but shall not be

limited to (i) work performed in the business or occupation of the supplier [or] (ii) work performed for the supplier by an agent. . . ." Id. "Supplier" is defined as "a seller, lessor or licensor who advertises, solicits or engages in consumer transactions . . . ." Id.

The Court concludes that the pertinent statutory language is clear by its terms and covers the legal services at issue here. The dealings between plaintiffs (the consumers) and CAIR and/or Mr. Days (the supplier) qualify as "services" because Mr. Days' activities constituted "work performed in the business or occupation of the supplier." VA. CODE ANN. § 59.1-198. Whether the "supplier" is CAIR or Mr. Days, the work promised to plaintiffs was legal services. See Statement of Facts at 5; Reply at 8. Mr. Days was hired by CAIR-VA as "its 'resident attorney' and 'manager' of its civil rights department to provide legal representation to Muslims complaining of various civil rights abuses." Saiyed Am. Compl. ¶ 4; Statement of Facts at 4-5. Mr. Days failed to deliver the legal services promised to plaintiffs while he was acting as an employee of CAIR. Whether Mr. Days acted as an "agent "of CAIR is an issue that is disputed by the parties. See Lopez v. CAIR, 826 F.3d at 496-99. Nonetheless, Mr. Days' conduct qualifies as the provision of "services" under the VCPA because it was work performed while he was employed by CAIR, in the course of the organization's activities as a "Muslim advocacy group." Statement of Facts at 4. Furthermore, even though CAIR's "stated policy [was] to provide pro bono legal services to the public," plaintiffs contend that "Days fraudulently obtained money from CAIR clients for CAIR's legal representation," qualifying as a "sale" of services for purposes of the statute. Saiyed Am. Compl. ¶ 6.

The services that Mr. Days promised to provide were also "used primarily for personal . . . purposes" by plaintiffs. See VA. CODE ANN. § 59.1-198. "Personal purposes" are those which are not commercial in nature. Compare Daughtry v. Gray's Body Shop, Inc., No.

CL09-2973 79 Va. Cir. 539, 2009 WL 7416523, at *2 (Va. Cir. Ct. Nov. 25, 2009), with RML

Corp. v. Lincoln Window Prod., Inc., No. CL03-1885, 67 Va. Cir. 545, 2004 WL 3568223, at

*11 (Va. Cir. Ct. Dec. 3, 2004). See also In re All Pending Chinese Drywall Cases,

No. CL09-3105, 80 Va. Cir. 69, 2010 WL 7378659, at *12-13 (Va. Cir. Ct. Mar. 29, 2010);

Bindra v. Michael Bowman & Assocs., Inc., No. 191866, 58 Va. Cir. 47, 2001 WL 1829999, at

*2 (Va. Cir. Ct. Sep. 19, 2001). Plaintiffs sought legal counsel from Mr. Days for claims related

to "immigration status, divorce proceedings, hostile work environment, and employment

discrimination" – all personal legal matters for non-commercial purposes. See Lopez Am.

Compl. ¶ 14; Saiyed Am. Compl. ¶¶ 54-55.[3]

Even if the language defining "consumer transaction" was ambiguous, the

legislative intent in passing the VCPA leads the Court to conclude that the Virginia General

Assembly intended for this type of transaction to be included within the auspices of the statute.

The Virginia General Assembly established the VCPA to "be applied as remedial legislation to

promote fair and ethical standards of dealing between suppliers and the consuming public." VA.

CODE ANN. § 59.1-197. According to the Virginia Supreme Court, the VCPA's stated statutory

intent is particularly significant because "[t]he legislature seldom chooses to expressly direct the

courts how to apply a statute. When it does so we must pay special attention to that choice and

ensure that it is given full effect. The General Assembly chose to include such direction in the

VCPA . . . . We construe remedial legislation liberally, in favor of the injured party." Ballagh v.

Fauber Enters., Inc., 773 S.E.2d 366, 368 (Va. 2015) (citing VA. CODE ANN. § 59.1-197).

---

[3]     In making this determination, the Court need not decide whether all legal services
qualify as consumer transactions under the VCPA, but rather only that the legal services in this
case so qualify.

Construing the statute liberally in favor of plaintiffs, the Court concludes that the VCPA extends to the "legal services" allegedly provided here.

The Court concludes that the Virginia Supreme Court would not agree with the conclusion of the two Virginia Circuit Court judges if this case were to come before it. The plain meaning of the VCPA explicitly encompasses this type of consumer transaction, and its inclusion would more effectively realize the statute's legislative intent.

## C. Exemptions

CAIR argues that even if the legal services at issue qualify as a "consumer transaction," they are exempt under the statute. It again cites Oberto v. Grogan, 88 Va. Cir. 188, 2014 WL 8383045, at *2. In that case, the Circuit Court first found that legal services "do not fit the VCPA's definition of consumer [transaction]." Id. at *2 (citing Bd. of Dirs. of the Port Royal Condo. Unit Owners' Ass'n v. Crossland Sav. FSB, 1989 Va. Cir. LEXIS 80, 15 Va. Cir. at 241). It also concluded that even if it did, the VCPA would be preempted by other law under which attorneys are licensed to practice law. See id. at *2. See also Caruth v. Clark, No. 16-0149, 2017 WL 1363314, at *5-6 (E.D. Va. Apr. 12, 2017) (reasoning that the VCPA "comprehensive licensing" exemption for attorneys applies to dentists). The Court disagrees.

The VCPA expressly excludes from its reach certain transactions, including those provided by "[b]anks, savings institutions, credit unions, small loan companies, public service corporations, [and] mortgage lenders," among others. See VA. CODE ANN. § 59.1-199(D). Legal services, however, are not listed among these express exclusions.

The VCPA also exempts "[a]ny aspect of a consumer transaction which aspect is authorized under laws or regulations of [the] Commonwealth [of Virginia] or the United States." See VA. CODE ANN. § 59.1-199(A). In interpreting this provision, the Virginia Supreme Court

14

has distinguished between those consumer transactions that are "authorized" and those that are "regulated." See Manassas Autocars, Inc. v. Couch, 645 S.E.2d 443, 447 (Va. 2007). The Virginia Supreme Court has ruled that Section 59.1-199(A) "exempts only those aspects of a consumer transaction that are 'authorized.' Authorized actions are those sanctioned by statute or regulation." Id. In so ruling, the Virginia Supreme Court declined to extend the exemption to other aspects of a consumer transaction "on the sole ground [that they are] regulated by other statutory provisions and regulations." Id.

This Court must draw the same distinction. CAIR asserts that "the VCPA is preempted because both rules of Virginia Supreme Court and Virginia State Bar regulate legal services." See Mot. at 10. To support its contention, CAIR points to a statute that governs the "practice of law" and the licensing of attorneys to practice law. VA. CODE ANN. § 54.1-3900 et seq. But as the Supreme Court of Virginia has observed, the word "regulated" is not synonymous with the word "authorized." See Manassas Autocars, Inc. v. Couch, 645 S.E.2d at 447. To qualify for the VCPA exemption, the provision of the legal services at issue here must have been authorized under some regulation or statute. See id. at 447. While the practice of law by a licensed attorney is authorized, the unauthorized practice of law is by definition not "authorized" by law or regulation. To the contrary, under the Rules of the Virginia Supreme Court and at least one other statute, the practice of law by an unlicensed non-lawyer is expressly prohibited. See VA. SUP. CT. R. 6:1 PRACTICE OF LAW et seq., (Mar. 1, 2018) ("No non-lawyer shall engage in the practice of law in the Commonwealth of Virginia or in any manner hold himself out as authorized or qualified to practice law in the Commonwealth of Virginia except as may be authorized by rule or statute."); VA. CODE ANN. § 54.1-3904 ("Any person who practices law without being authorized or licensed shall be guilty of a Class 1 misdemeanor.").

15

Mr. Days misrepresented himself as a lawyer and promised to assist plaintiffs with their legal matters in his capacity as CAIR's "resident attorney." Mr. Days was not licensed to practice law, and thus the legal services he provided to plaintiffs were categorically not authorized under Virginia Supreme Court rules and at least one statute governing the licensed practice of law. This exemption, therefore, does not preclude the VCPA from applying to the legal services at issue.[4]

## IV. CONCLUSION

For the reasons set forth in this Opinion, the Court will deny CAIR's motion for partial summary judgment with respect to plaintiffs' VCPA claim. An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 9|28|18

---

[4]     The parties did not identify any separate statute or regulation that authorizes the provision of legal services by a non-lawyer or legal service entity.